**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JEFFEREY SCOTT RANDALL,** ) | |
| **ID # 798548,** ) | |
| Petitioner, ) | |
| vs. ) | No. 3:07-CV-2156-M-BH |
| ) | |
| **NATHANIEL QUARTERMAN, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal Justice,** ) | |
| **Correctional Institutions Division,** ) | |
| Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions and recommendation.

**I. BACKGROUND**

**A. Factual and Procedural History**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), filed this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. He challenges his Dallas County conviction for attempted sexual assault in Cause No. F97-02245-TR and denials of release on mandatory supervision in 2005, 2006, and 2007. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

According to a prosecution report dated March 19, 1997, the complainant and her husband met Petitioner while fishing on or about March 17, 1997. (*See* Prosecution Report at 5, attached to Pet. Writ of Habeas Corpus ("Pet.") as pages 50-54.)[1] The reports states that Petitioner later took the complainant to a vacant lot, pushed her from his moving vehicle, kicked her to obtain cooper-

---

[1] The prosecution's evidence is summarized in *Randall v. State*, No. 05-03-01457-CR, 2005 WL 2362444, at *4 (Tex. App. – Dallas Sept. 27, 2005, pet. ref'd). The prosecution report is the most detailed summary of the relevant events of March 17, 1997, however.

ation for sex, beat her and threatened to kill her when she would not cooperate, removed her shirt and bra, and pocketed her silver necklace. (*Id.*) When she escaped while he was removing his pants, Petitioner followed in his truck and knocked her down by striking her with the vehicle. (*Id.*) A witness summoned the police when he heard the complainant screaming. (*Id.*) Upon arrival, police officers saw Petitioner flee into a wooded area while the complainant ran to them screaming for help. (*Id.*) When Petitioner returned to his vehicle, the police officers arrested him; they found the complainant's necklace in his possession. (*Id.*) The incident left the complainant scratched and bruised. (*Id.*) A police report shows that she received some treatment from paramedics at the crime scene. (*Id.* at 56.) Although photographs were taken at the scene, the police collected no physical evidence. (*See id.* at 50-54.)

In July 1997, Petitioner was indicted for attempted aggravated sexual assault with a deadly weapon. Supp. CR[2] at 2. The indictment alleged that on or about March 17, 1997, Petitioner did

> unlawfully, then and there knowingly and intentionally attempt to cause penetration of the female sexual organ of . . . the complainant, without the consent of the complainant . . . and, in the course of the same criminal episode, said defendant did use and exhibit a deadly weapon, to-wit: a motor vehicle, and said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended.

*Id.* The indictment was later amended to strike the reference to a deadly weapon and to strike an enhancement paragraph. *Id.* at 6-7. On August 18, 1997, Petitioner pled guilty to attempted sexual assault in exchange for a fifteen year sentence and a $500 fine. S.H. Tr.[3] at 141-44 (plea agreement and other plea papers). He judicially confessed that he was guilty of attempted sexual assault as

---

[2] "Supp. CR" refers to the Supplemental Clerk's Record in Cause No. F97-02245-R.

[3] "S.H. Tr." denotes the state habeas records attached to *Ex parte Randall*, No. 67,479-01, slip op. (Tex. Crim. App. June 13, 2007).

alleged in the charging indictment as amended. *Id.* at 144. Petitioner did not appeal the conviction. (Pet. at 3.)

More than five years later, Petitioner asked for appointment of counsel on March 13, 2003, so that he could file a motion for DNA testing. CR[4] at 2. On July 7, 2003, appointed counsel filed a motion for DNA testing with the trial court that was denied on August 15, 2003. *Id.* at 10, 29-30. In the motion, Petitioner swore that he was not the person who committed the offense for which he was convicted, and he provided an affidavit averring that he is "innocent of the charge(s) against [him]" but containing no details of his version of the events. *Id.* at 10, 12. The court of appeals affirmed the denial of the DNA motion. *Randall v. State*, No. 05-03-01457-CR, 2005 WL 2362444, at *4 (Tex. App. – Dallas Sept. 27, 2005, pet. ref'd.) The Court of Criminal Appeals refused a petition for discretionary review on April 5, 2006.

On December 4, 2006, Petitioner filed a state petition seeking habeas relief. S.H. Tr. at 2. It states that he gave the following information to counsel:

> On March 17, 1997, late in the evening the complainant, her husband, and [Petitioner] had pulled off of the road and into a dark vacant field to smoke crack cocaine. The drugs could be purchased from an apartment complex nearby. [Petitioner] gave Curtis (the husband) some money to go buy some crack, and he left the complainant and [Petitioner] behind while he went for the drugs.
> 
> While he was away the complainant offered [Petitioner] a silver necklace for a hit. [Petitioner] then gave her about ten dollars of crack, and the complainant smoked it.
> 
> When Curtis returned he saw his wife and [Petitioner] laughing and having a good time. He jerked her out of the vehicle and began beating her up. Curtis accused her of foolin [sic] around with that "cracker" [Petitioner]. [Petitioner] tried to intervene but Curtis was to [sic] big and too furious for [Petitioner] to handle.
> 
> Then, the police arrived. The complainant ran toward them while Curtis and [Petitioner] ran off into a nearby wooded area. But, [Petitioner] returned to the vehicle, and was later arrested.

---

[4] "CR" refers to the Clerk's Record in Cause No. F97-02245-R.

*Id.* In an affidavit in response, Petitioner's trial attorney did not specifically address whether Petitioner conveyed that version to him. *See id.* at 146-50.

The Court of Criminal Appeals denied the state petition without written order on findings of the trial court without a hearing. *Ex parte Randall*, No. 67,479-01, slip op. at 1 (Tex. Crim. App. June 13, 2007). On October 29, 2007, the Supreme Court denied a petition for certiorari related to the denial of Petitioner's state writ. *See* Letter from Clerk Suter to Clerk of Tex. Ct. Crim. Appeals of 10/29/07, at 1 (copy in state court records).

Petitioner's federal petition was received in the Eastern District of Texas on or about September 21, 2007, and was subsequently transferred to this Court.[5] (Pet. at 1.) This Court received it on December 21, 2007. Respondent filed an answer on March 31, 2008. (*See* Answer at 1.) Petitioner has filed no reply brief.

**B. Substantive Claims**[6]

Petitioner challenges his 1997 conviction on four grounds: (1) the State breached the plea agreement based on the State's July 23, 2003 response to his DNA motion characterizing his conviction as "attempted aggravated sexual assault" and the BPP's use of the prosecution and offense reports attached to that response to deny him release to mandatory supervision on March 21, 2005; (2) his guilty plea was rendered involuntary due to ineffective assistance of counsel; (3) the

---

[5] Under the prison mailbox rule, a federal habeas petition is deemed filed when the prisoner delivers the petition to prison authorities for mailing to the court. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999). The record does not reflect when petitioner tendered his petition to the prison authorities for mailing, but it was "filed" sometime near the date that the Eastern District received the federal petition on September 21, 2007. Because the precise date of its filing makes no difference to the outcome of this action, the date of receipt is used as the date of filing.

[6] Petitioner seeks declaratory, prospective injunctive, and monetary relief. (Pet. at 7.) The "sole function" of a writ of habeas corpus "is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976). Moreover, Petitioner has a civil action pending in another court. Accordingly, only his habeas claims will be considered.

State withheld exculpatory evidence, *i.e.*, a medical report created on the date of the offense; and (4) newly discovered evidence, *i.e.*, the suppressed medical report, shows he is actually innocent. In his fifth claim, he claims that the State mischaracterized his conviction as involving a deadly weapon in its response to his DNA motion, thus subjecting him to double jeopardy. His sixth and seventh claims allege, respectively, denial of due process and violation of the separation of powers doctrine by the Board of Pardons and Paroles ("BPP") when they refused to release him on mandatory supervision on March 21, 2005, February 6, 2006, and January 9, 2007.[7] (Pet. at 7-8, 10-24.)

## C. Procedural Issues

Respondent concedes that petitioner has exhausted his administrative remedies. (Answer at 4.) He urges the Court to find the petition entirely untimely, or alternatively, to find Claim 4 not cognizable on federal habeas review and the other claims to be without merit. (*See id.* at 4-23.)

## II. AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "Act"), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

---

[7] Petitioner actually refers to a January 5, 2007 denial (*see* Pet. at 20), but his attached exhibit shows that the denial occurred on January 9, 2007, (*see id.* at 32).

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, these AEDPA standards apply to the claims Petitioner raised in his state application for writ of habeas corpus.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established

6

federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. ACTUAL INNOCENCE

Respondent argues that Petitioner's actual innocence claim (Claim 4) is not cognizable on federal habeas review. (Answer at 20.)

Federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 only on grounds that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Because Petitioner is undoubtedly in custody pursuant to a judgment of a State court, the Court must determine whether Petitioner's actual-innocence claim alleges a violation of the Constitution or laws or treaties of the United States.

The Fifth Circuit Court of Appeals has recognized *Townsend v. Sain*, 372 U.S. 293 (1963) as the unequivocal position of the United States Supreme Court on the matter. *See Boyd v. Puckett*, 905 F.2d 895, 896 (5th Cir. 1990); *Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (per curiam). In *Townsend*, the Court held that "the existence merely of newly discovered evidence

7

relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." 372 U.S. at 317, *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). A stand-alone claim of actual innocence is not cognizable on federal habeas review. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006).

Petitioner, moreover, has not established that he is actually innocent. The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995). Petitioner relies on a medical report of the complainant from the date of the charged offense which he alleges that he did not discover until July 23, 2003. (*See* Attachment to Pet. at 55 (also found at S.H. Tr. at 25).) The medical report provides nothing to exonerate petitioner of the offense to which he pled guilty, however, and it supports the injuries alleged in the prosecution report. (*Id.*)

Because actual innocence based upon new evidence relevant to the guilt of a state prisoner is not cognizable on federal habeas corpus, and Petitioner has not shown himself to be actually innocent in any event, Claim 4 entitles him to no federal habeas relief.

## II. LIMITATIONS

Respondent also argues that Petitioner filed his federal habeas action outside the one-year limitations period. (Answer at 4-8.)

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-

year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition. Nor does he base his petition on any new constitutional right under subparagraph (C). Because Petitioner's claims relate to his original plea and sentence and actions by the BPP, the one-year statute of limitations is calculated from the date his conviction became final in accordance with subparagraph (A) or the date he knew or should have known the factual bases for his claims in accordance with subparagraph (D), whichever provides the later commencement date.

**A. Calculation Date**

Because Petitioner did not appeal his conviction, for purposes of § 2244(d), his state conviction became final thirty days after he pled guilty and was sentenced on August 18, 1997. *See Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir. 2000) (noting that a conviction becomes final under Texas law thirty days after the defendant pled guilty and failed to file an appeal); *Ellis v. Johnson*, 11 F. Supp. 2d 695, 698 (N.D. Tex. 1998). His conviction thus became final on September 17, 1997.

The date Petitioner knew or should have known the factual basis for each of his remaining claims differs. His breach of plea agreement claim (Claim 1) appears to be premised on both the

9

State's response to his DNA motion characterizing his conviction as "attempted aggravated sexual assault" and the BPP's use of the prosecution and offense reports attached to that response to deny him release to mandatory supervision on March 21, 2005. (*See* Pet. at 10-11.) The limitations period for the part of the claim based on the BPP's use of the reports began no earlier than March 21, 2005, when he was denied release on mandatory supervision based on those reports. The limitations period for the part of the claim based on the State's response is the response date, July 23, 2003.

As for Petitioner's second claim of an involuntary plea based on ineffective assistance of counsel, he knew or should have known the factual basis for his allegations when he pled guilty and was convicted in 1997. Consequently, the date that the conviction subsequently became final, September 17, 1997, provides the appropriate starting point for the limitations period for this claim.

As for Petitioner's claim that the State suppressed a medical report that was attached to the July 23, 2003 response to his motion for DNA testing (Claim 3), Respondent contends that Petitioner knew or should have known of the alleged suppressed medical report when he pled guilty because the record indicates that his attorney was shown the prosecutor's evidence, including the medical report. (Answer at 5-6.) The record supports the contention. *See* S.H. Tr. at 137 (trial court concluding on state habeas review that Petitioner's trial attorney "was in possession of all available prosecution evidence" and that there was no suppression of evidence by the State). Petitioner does not dispute that the State shared the prosecution report with his attorney. (*See* Pet. at 15.) The prosecution report specifically refers to a police report. *See* CR at 21. The police report indicates that the complainant was treated at the scene by the Dallas Fire Department and released. *Id.* at 26. Even assuming the medical report was not shown to counsel, Petitioner had sufficient information

10

to seek the report well before the State responded to the DNA motion. Through the exercise of due diligence, Petitioner would have learned of the medical record by the time his conviction became final on September 17, 1997, after he failed to file an appeal. Petitioner has not carried his burden to show that a later date should apply under 28 U.S.C. § 2244(d)(1)(D). *See Norrid v. Quarterman*, No. 4:06-CV-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (recognizing that the burden lies with petitioner).

Petitioner's fifth claim that the State mischaracterized his conviction as involving a deadly weapon in its response to his DNA motion, thus subjecting him to double jeopardy, likewise relates to the filing of the response. (*See* Pet. at 19.) Therefore, the limitations period for this claim also began when the response was filed on July 23, 2003.

Claims 6 and 7 relate to the BPP's denial of release on mandatory supervision on March 21, 2005, February 6, 2006, and January 9, 2007. (*See* Pet. at 7, 11, 18-24.) When a petitioner challenges multiple denials by the BPP, the limitations period for each begins to run on the date of the denial even if virtually identical reasons are given for the denials. *See Conger v. Quarterman*, No. 4:07-CV-0520-Y, 2008 WL 4062067, at *2 (N.D. Tex. Aug. 25, 2008) (accepting recommendation of Mag. J.);[8] *accord McAleese v. Brennan*, 483 F.3d 206, 214, 217-19 (3rd Cir. 2007) (holding that in the context of a parole denial, the relevant factual predicate is actual denial of parole, and there is no continuing violation theory applicable in the § 2254 context to trigger a later commencement of the limitations period based on later parole denials that are not challenged in the § 2254 action). *But see Smith v. Grubbs*, 42 Fed. App'x 370, 372 (10th Cir. 2002) (holding that "successive denials

---

[8] In *Conger*, the court specifically rejected an objection by the respondent that the petitioner was barred from challenging the more recent determination denying release on parole because the reasons given for the two denials "were virtually the same". *See* 2008 WL 4062067, at *1 n.1.

11

of parole d[o] not involve separate factual predicates and therefore do not warrant separate statute of limitations calculations"). Based on *Conger*, Petitioner learned the factual predicate for each denial on the dates of denial.

Because Petitioner filed his September 21, 2007 federal petition within a year of the January 9, 2007 denial, the portions of Claims 6 and 7 relating to that denial were filed within the limitations period. A literal application of § 2244(d)(1) renders all of his other cognizable claims untimely in the absence of tolling, however.

## B. Tolling

The AEDPA expressly and unequivocally provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added). Petitioner has filed two documents in state court that could toll the limitations period – (1) his July 7, 2003 motion for DNA testing, and (2) his December 4, 2006 application for writ of habeas corpus.

### 1. *Motion for DNA Testing*

While a properly filed motion for DNA testing remains pending in state court, the federal limitations period is tolled to the extent the motion sought review of the pertinent judgment or claim challenged in the federal action. *Hutson v. Quarterman*, 508 F.3d 236, 239-40 (5th Cir. 2007). However, when petitioner filed his motion for DNA testing on July 7, 2003, the statutory limitations period had already expired for his claims of involuntary plea (Claim 2) and suppression of the medical report (Claim 3). The limitations period is not tolled by a filing made after the expiration of the one-year period. *See* Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); *Hill v. Quarterman*,

No. 4:08-CV-217-Y, 2008 WL 4792530, at *2 (N.D. Tex. Oct. 27, 2008) (accepting recommendation of Mag. J.). The DNA motion also does not toll the limitations period as to the double jeopardy allegation in Claim 5 and the 2005 and 2006 denials of release in Claims 6 and 7 because it did not seek review of those claims.

As for the breach of plea agreement claim (Claim 1), the factual predicate for both aspects of that claim arose while the DNA motion was pending.[9] It tolls the limitations period until ninety days after the Court of Criminal Appeals refused the petition for discretionary review on April 5, 2006, allowing for the filing of a petition for certiorari. Consequently, the limitations period for Claim 1 began on July 5, 2006. Without additional tolling, Claim 1 also falls outside the limitations period.

### 2. *State Habeas Application*

While a properly filed state habeas application challenging the judgment of conviction remains pending in state court, the limitations period is also tolled for filing a federal challenge to that judgment. *See Henderson* v. *Johnson*, 1 F. Supp. 2d 650, 652 (N.D. Tex. 1998). Petitioner filed his state application on December 4, 2006. As discussed above, the statutory limitations period had already long expired for Claims 2, 3, 5, and the 2005 and 2006 denials in Claims 6 and 7. Because the state application was filed within one year of February 6, 2006, the factual predicate for the 2006 denial in Claims 6 and 7, it tolled the limitations period for these claims until the application was denied on June 13, 2007. Nevertheless, the limitations period began to run again on June 14, 2007 and would have expired as to the 2006 denial in Claims 6 and 7 before Petitioner filed his federal

---

[9] For purposes of these findings, the Court assumes without deciding that the motion remained pending throughout the appellate process, including the petition for discretionary review, and ninety days thereafter for the filing of a petition for certiorari. Such assumption is consistent with *Hutson* and the normal appellate process but the Fifth Circuit has not specifically addressed the matter.

petition in September 2007.

The state application was also filed within one year of July 5, 2006, the defacto commencement date for Claim 1, and thus tolled the limitations period for that claim until the application was denied on June 13, 2007. With the combined tolling from the DNA motion and the state habeas application, both aspects of Claim 1 were filed within the limitations period.

In conclusion, the portions of Claims 6 and 7 relating to the 2007 denial are timely. The statutory tolling provision saves Claim 1, but it does not save Claims 2, 3, 5, and the part of Claims 6 and 7 relating to the 2005 and 2006 denials of release on mandatory supervision. These claims are untimely unless equitable tolling is warranted. Although the one-year limitations period may be equitably tolled in rare and exceptional circumstances, *Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000), nothing in this case indicates that equitable tolling is warranted, and these claims should be deemed untimely.[10]

## IV. BREACH OF PLEA AGREEMENT

In his first claim, Petitioner alleges that the State breached his plea agreement when its July 23, 2003 response to his DNA motion mischaracterized his conviction as "attempted aggravated sexual assault" and when the BPP used prosecution and offense reports attached to that response to deny him release to mandatory supervision on March 21, 2005. (*See* Pet. at 10-11.) Respondent argues that there has been no breach of the plea agreement because it contains no promise to prohibit

---

[10] Notwithstanding untimeliness, the merits of some of the claims will also be addressed.
    A court will sometimes address the merits of a claim that it believes was presented in an untimely way: for instance, where the merits present no difficult issue; where the court wants to give a reviewing court alternative grounds for decision; or where the court wishes to show a prisoner (who may not have a lawyer) that it was not merely a procedural technicality that precluded him from obtaining relief.
*Carey v. Saffold*, 536 U.S. 214, 225-26 (2002).

14

the BPP from considering the violent nature of Petitioner's offense in considering whether to release him on mandatory supervision. (Answer at 13-14.)

"[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." *Mabry v. Johnson*, 467 U.S. 504, 509 (1984). Such a breach implicates the Due Process Clause of the United States Constitution. *See id.* Whether government conduct "violate[s] the terms of the plea agreement is a question of law" and "[t]he party alleging a breach of the plea agreement bears the burden of proving the underlying facts establish a breach by a preponderance of the evidence." *See United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002). "In determining whether the terms of a plea agreement have been violated, the court must determine whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993).

In this instance, the plea agreement contains nothing about not using the nature of the offense when considering release on mandatory supervision. *See* S.H. Tr. at 141. It specifically indicates that Petitioner will plead guilty in exchange for a fifteen year sentence and $500 fine. *Id.* Although the form "Plea Bargain Agreement" has space to indicate "[a]dditional provisions of the agreement", that space is blank. *See id.* Moreover, Petitioner acknowledged that the written plea agreement "fully contains <u>all</u> the provisions of said agreement." *Id.* He has not shown that he had a reasonable understanding that the BPP could not use the violent nature of his offense against him when considering him for release on mandatory supervision.

Petitioner has also shown no breach of the plea agreement caused by the State's July 23, 2003 response to his DNA motion. While it is true that the State mischaracterized Petitioner's

15

conviction as "attempted aggravated sexual assault" in its response to his DNA motion, *see* CR at 13, 15, the mischaracterization was immaterial to the DNA motion, and nothing in the plea agreement prevented the State from opposing a motion for DNA testing.[11]

In conclusion, Petitioner has not shown facts sufficient to establish a breach by the State, and this claim entitles him to no federal habeas relief.

## V. DUE PROCESS

In his sixth claim, Petitioner alleges that the BPP has denied him due process by refusing to release him on mandatory supervision in January 2007.[12] (Pet. at 19-22.)

Although "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence", *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), Texas has created a constitutional expectancy of early release for eligible inmates through Tex. Gov't Code Ann. §§ 508.147, 508.149, its mandatory supervision scheme, *Teague v. Quarterman*, 482 F.3d 769, 775-77 (5th Cir. 2007). The Texas scheme gives rise to a liberty interest subject to due process protections. *Id.* However, the scheme in place since September 1, 1996, is not entirely mandatory due to some discretion built into it by the Texas legislators. *Id.* at 775. Section 508.149 eliminates the mandatory nature of the scheme if the BPP "determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public."

---

[11] Petitioner's untimely claim of double jeopardy (Claim 5) based on the mischaracterization of his conviction likewise has no merit. The protections of the Double Jeopardy Clause do not extent to denials of release on mandatory supervision. *See Russell v. Cockrell*, No. 3:01-CV-1425-D, 2003 WL 21750862, at *8 (N.D. Tex. July 25, 2003) (accepting recommendation of Mag. J.).

[12] Because Petitioner filed his only state application for writ of habeas corpus in December 2006, he clearly has not exhausted his state remedies regarding the 2007 denial of release on mandatory supervision. Despite the lack of exhaustion, the federal courts may deny a habeas petition on the merits. *See* 28 U.S.C. § 2254(b)(2).

In the context of the Texas scheme for release on mandatory supervision, "due process requires notice and a meaningful opportunity to be heard," and "[i]f release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Ex parte Geiken*, 28 S.W.3d 553, 560 (Tex. Crim. App. 2000) (citing *LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *Greenholtz*, 442 U.S. at 16). The notice must typically inform the inmate "of the specific month and year in which he will be reviewed for release on mandatory supervision." *Ex parte Ratzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Petitioner does not argue that he was not given advance notice that the BPP would review his case or that he was not given an opportunity to submit information to the BPP for its review.[13] He instead argues that the BPP is denying release based upon unproven information in the prosecution and offense reports attached to the State's response to his DNA motion that was not admitted by his guilty plea. (Pet. at 11, 19.) He contends that his recent behavior is the most accurate reflection of his ability to adjust to release, and that the BPP states no factual basis for its determination and provides no fair opportunity for rebuttal. (*Id.* at 20-21.)

Due process does not require the BPP " to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release." *Greenholtz*, 442 U.S. at 15. The BPP gave Petitioner advance notice of his January 2007 review, and gave him an opportunity to submit information for review. Upon completing its review, the BPP informed Petitioner of the reasons for denying him release on mandatory supervision. Petitioner has received all the process which was due.

---

[13] He actually provided a BPP document which shows that he was notified on October 16, 2006, that the challenged January 2007 review would occur within thirty days of his next scheduled review date (February 1, 2007), and that he had until December 18, 2006, to submit additional information he wanted to be considered. (*See* Ex. 1, attached to Pet. at 36.)

17

## VI. SEPARATION OF POWERS

In his seventh claim, Petitioner alleges that the BPP has violated the separation of powers doctrine by usurping the role of the judiciary and transforming his offense into one that makes him ineligible for release on mandatory supervision. (Pet. at 22-24.) Petitioner, however, "cites to no clearly established federal law that § 508.149(b) implicates a violation under the separation of powers clause, and none has been found." *See McDonald v. Quarterman*, No. 4:06-CV-0214-A, 2007 WL 1989599, at *6 (N.D. Tex. July 2, 2007) (accepting recommendation of Mag. J.). In such circumstances, the claimed separation-of-powers violation entitles a petitioner to no habeas relief. *See*, *e.g.*, *id.*; *Gonzalez v. Quarterman*, No. 4:07-CV-0478-A, 2008 WL 3413136, at *4 (N.D. Tex. Aug. 11, 2008) (accepting recommendation of Mag. J.).[14]

## IV. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 10th day of April, 2009.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[14] The same rationale would apply to petitioner's challenges to the 2005 and 2006 denials, even if considered to be timely.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE